## EL PASO ELECTRIC CO. v. INDEMNITY INS. CO. OF NORTH AMERICA.

### No. 2568.

Court of Civil Appeals of Texas. El Paso.
Oct. 8, 1931.

Rehearing Denied Oct. 29, 1931.

Hunter, Brown & Brooke, of El Paso, for appellant.

R. A. D. Morton, of El Paso, for appellee.

WALTHALL, J.

Bailey Perkins met his death about the 14th day of March, 1925, while engaged in constructing or installing certain electrical work and equipment on an electrical substation south of and adjoining the main power plant of the El Paso Electric Company, hereinafter referred to as Electric Company, in the city and county of El Paso. The work was being done under the supervision of and by Stone & Webster, Inc., a separate entity from the Electric Company, under a contract hereinafter referred to. A suit was brought by Perkins' widow for herself and minor children against the Electric Company and final judgment obtained. El Paso Electric Co. v. Perkins (Tex. Civ. App.) 292 S. W. 935.

At that time Indemnity Insurance Company of North America, hereinafter referred to as Insurance Company, appellee herein, was an insurer for Stone & Webster, Inc., and it is the contention of Electric Company that appellee's policy , of insurance upon which the suit was brought covered both Stone & Webster, Inc., and Electric Company, against the contingency resulting in the death of Bailey Perkins, and that Insurance Company was therefore liable to Electric Company upon its contract of insurance for any damages which it was required to pay out as a result of the Perkins death claim. Insurance Company denied liability and refused to defend the Perkins death claim suit; the suit was defended by the Electric Company, and, upon final judgment rendered, appellant paid same, with interest and costs, amounting in the aggregate to the sum of $32,249.56, for the recovery of which this suit is brought.

The insurance policy executed by Insurance Company and made the basis of appellant's suit, in its parts necessary to a clear understanding of appellant's cause of action, is as follows:

"Standard Workmen's Compensation and Employers' Liability Policy.

"Indemnity Insurance Company of North America

"Philadelphia

"A Stock Company

"(Hereinafter called the Company)

"Hereby agrees with the Employer named in the Declarations attached hereto and forming part hereof, as respects personal injury sustained by employees, including death at any time resulting therefrom,

"One. (a) To pay promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due,

"(1) To such person because of the obligation for compensation for any such injury imposed upon or accepted by this Employer under such of certain statutes, as may be applicable thereto, cited and described in an endorsement attached to this Policy, each of which statutes is herein referred to as the Workmen's Compensation Law, and

"(2) For the benefit of such person the proper cost of whatever medical, surgical, nurse or hospital services, medical or surgical apparatus or appliances and medicines, or, in the event of fatal injury, whatever funeral expenses are required by the provisions of such Workmen's Compensation Law.

"It is agreed that all of the provisions of each Workmen's Compensation Law covered hereby shall and will remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury or death covered by this Policy, while this Policy shall remain in force. Nothing herein contained shall operate to so extend this Policy as to include within its terms any Workmen's Compensation Law, scheme, or plan not cited in an endorsement hereto attached.

"One. (b) To Indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada. In the event of the bankruptcy or insolvency of this Employer the Company shall not be relieved from the payment of such indemnity hereunder as would have been payable, but for such bankruptcy or insolvency. If, because of such bankruptcy or insolvency, an execution against this Employer is returned unsatisfied in an action brought by the injured, or by another person claiming by, through or under the injured, then an action may be maintained by the injured; or by such person claiming by, through or under the injured, against the Company under the terms of this Policy for the amount of the judgment in said action not exceeding the amount of this Policy.

"Two. To serve this Employer (a) by the inspection of work places covered by the Policy when and as deemed desirable by the Company and thereupon to suggest to this Employer such changes or improvements as may operate to reduce the number or severity of injuries during work, and (b) upon notice of such injuries, by investigation thereof and by settlement of any resulting claims in accordance with law.

"Three. To defend, in the name and on behalf of this Employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although such suits, other proceedings, allegations or demands are wholly groundless, false or fraudulent.

"Four. To pay all costs taxed against this Employer in any legal proceeding defended by the Company, all interest accruing after entry of judgment and all expenses incurred by the Company for investigation, negotiation or defense.

"Five. This agreement shall apply to such injuries sustained by any person or persons employed by this Employer whose entire remuneration shall be included in the total actual remuneration for which provision is hereinafter made, upon which remuneration the premium for this Policy is to be computed and adjusted, and, also to such injuries so sustained by the President, any Vice-President, Secretary or Treasurer of this Employer, if a corporation. The remuneration of any such designated officer shall not be subjected to a premium charge unless he is actually performing such duties as are ordinarily undertaken by a superintendent, foreman or workman.

"Six. This agreement shall apply to such injuries so sustained by reason of the business operations described in said Declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said Declarations or elsewhere in connection with, or in relation to, such work places.

"G. No action shall lie against the Company to recover upon any claim or ·for any loss under Paragraph One (b) foregoing unless brought after the amount of such claim or loss shall have been fixed and rendered certain either by final judgment against this Employer after trial of the issue or by agreement between the parties with the written consent of the Company, nor in any event unless brought within two years thereafter.

"K. The Company shall be subrogated in case of any payment under this Policy, to the extent of such payment, to all rights of recovery therefor vested by law either in this Endeavor, or in any employee or his dependents claiming hereunder, against persons, corporations, associations or estates."

### Declarations.

"Item 1. Name of this Employer: Stone & Webster, Inc. (Division of Construction and Engineering) and/or the owner or operating concerns or individuals named in endorsement or endorsements to which may be attached to the policy. P. O. Address 147 Milk street, Boston, Massachusetts."

"It is understood and agreed that the following company is hereby named as an additional assured under the policy to which this endorsement is attached: El Paso Electric Company but only with respect to work undertaken by Stone & Webster, Inc., for said additional assured upon the so-called 'cost plus' basis or plan.

"Nothing herein contained shall vary, alter or extend any provision or condition of the Policy other than as above stated."

Appellant then alleged that said policy contained certain riders and declarations as set out: (6) That attached to the said policy of insurance and made a part thereof, under the heading "Adjustment of Rate Endorsement," was a classification of the operations covered by the policy, the twenty-third and twenty-fourth numbered paragraphs not copied above, of which were as follows:

"23. Electric light and power line construction work—including Drivers, Chauffeurs and their helpers. (No payroll division with No. 7539 'Electric Light and Power Companies') Classification No. 7538, Premium rate for $100.00 of payroll $6.17.

"24. Electrical Apparatus—installation and repair, excluding the erection of poles, the stringing of wires, the installation of service transformers on poles or on the outside of buildings, or the making of service connections. Classification number 3723, premium rate for $100.00 of payroll $3.28."

Appellant alleges:

That attached to said contract and policy of insurance and made a part thereof was a rider headed "Declarations," providing as item 1 that the name of the employer was Stone & Webster, Inc. (division of construction and engineering) and/or the owner or operating concerns or individuals named in indorsement or indorsements which may be attached to the policy; then follows item 1 fixing the life of the policy; item 3 indicating the location of places such as factories, shops, yards, etc., where the policy shall apply.

That attached to said policy was what was known as an estimation schedule, clauses 23 and 24 as in paragraph No. 6, above. That said policy and contract covered all operations usual to the business of construction engineers, and that at the time of the death of Bailey Perkins the said contractor was engaged as a construction engineer, and that said Bailey Perkins was under its supervision and control and engaged in the work which he was doing by virtue of his employment.

That by a rider or slip attached to said contract or policy of insurance, and made a part thereof, and effective within the life of the policy, it was understood and agreed that the Electric Company was named as an additional assured under the policy but only with respect to work undertaken by Stone & Webster, Inc., for said additional assured upon the so-called cost plus basis or plan.

That by a previous rider or indorsement, and made a part of the policy, there was provided the following: "The undermentioned policy is hereby extended to cover the obligation for compensation imposed by law on individuals, copartnerships or corporations for whom the assured named in Item One of the Declaration of said policy is doing work as a contractor or otherwise, as respects bodily injuries or death suffered by employees of the assured named in the Declaration so far as such bodily injuries or death may be suffered by reason of the trade, business or work described therein, and covered thereby." Then follows a list of the concerns protected, El Paso Electric Company being specifically named, Electric Company, its successor, was protected thereby. The indorsement, continuing, provides: "But only with respect to the work undertaken by Stone & Webster, Inc., for said concerns."

It is further alleged that attached to said policy and a part of it was what was known and called, "Policy Amendment Endorsement No. 2," as follows: "It is hereby understood and agreed that employees of any of the firms and corporations for whom Stone & Webster, Inc., have work to perform shall be considered employees of the said Stone & Webster, Inc., within the coverage provided by the undermentioned policy during the period that said employees are under the supervision or control of the said Stone & Webster, Inc., the basis of the premium payment shall be the remuneration earned by said employees, and the said Stone & Webster, Inc. hereby agrees to furnish to the company through an accurate statement the amount of remuneration earned by such employees while so working." Such endorsement, by its provisions, being effective with even date of the policy.

It is alleged that the accident resulting in the death of Bailey Perkins occurred in connection with, and with respect to, and by reason of, the work undertaken by Stone & Webster, Inc., for Electric Company; that at the time of the construction of said work Stone & Webster, Inc., was engaged in doing said work for Electric Company under a contract upon what was known as the "cost plus" basis, or percentage basis plan, and that at said time Bailey Perkins was engaged in doing said work as an employee either of Stone & Webster, Inc., or of Electric Company, or of both of said parties, in respect to and in connection with work being done by Stone &

Webster, Inc., for Electric Company, under said contract upon said plan as stated and under the supervision and control of said contractor; that, after the execution and delivery of said policy, the contractor undertook to do the work mentioned for Electric Company upon said cost plus basis plan, Bailey Perkins being employed upon said work, and while so engaged met his death through the negligence of Electric Company and an employee engaged in other work independent of the work upon which Bailey Perkins was engaged, as alleged and claimed by the surviving wife and children of Bailey Perkins, on account of which they sued and recovered judgment as above stated; that it was intended by the contract and policy and the indorsements thereon, as stated, to cover and protect against the injury to Bailey Perkins which was within the contemplation of the parties, the contract, and policy of insurance, and its declarations did cover and protect, not alone the contractor, but Electric Company against liability or damages occasioned or suffered by Electric Company, by reason of, or on account of, the accident resulting in the death of Bailey Perkins, engaged as he was at the time in making repairs or alterations upon the premises, that was drawing a ground chain across the transmission wires upon which he was about to work, preparatory to making repairs thereon, or to change or put in certain electrical connections, and in installing or repairing certain lightning arresters, etc., upon the switch-tower of Electric Company, in pursuance of his duties and work undertaken by the contractor. The death of Bailey Perkins happened with respect to said work and by reason thereof and the business described and covered by the policy for Electric Company.

Appellant then states the suit brought by Mrs. Perkins and children based upon the facts here alleged, with the result as stated, notice to insurance company, etc., its failure to defend, the suit resulting in a final judgment against appellant, and its payment by appellant and said judgment and its payment made the basis of this suit.

Appellee, insurer, in its answer, included a plea in abatement, grounded on the fact that there was pending in the United States District Court at El Paso a suit wherein the Electric Company was plaintiff and said insurer was defendant, in which suit appellant here, plaintiff therein, was seeking to recover said sums of money on two other policies issued by said insurer, which plea the court overruled, and to which ruling defendant excepted. We have mentioned the above only because we find it stated in appellee's brief. No affirmative ruling on the matter of said plea is requested, and we make none, and need not further refer to it.

Appellee, further answering, alleged that it issued the policy sued on on February 1,

1925, which was a workmen's compensation policy and plead various provisions thereof, alleging that, by reason of the terms of said policy, same was intended to and did cover only liability for workmen's compensation under the Texas law; that same contained an indorsement prescribed by the Insurance Commission of Texas, limiting its operation to and under the Texas Workmen's Compensation Law (Rev. St. 1925, art. 8306 et seq.); that Perkins, who was killed on March 15, 1925, was not an employee of the Electric Company, but on said date, and for several years prior thereto, was an employee of Stone & Webster, Inc., which was an independent contractor; that it was adjudged on the El Paso Electric Co. v. Perkins Case (Tex. Civ. App.) 292 S. W. 935, to be, and it was a fact, that Perkins was an employee of Stone & Webster, Inc., and not of the Electric Company.

Appellee's answer further set up that insurer recognized its liability to Perkins' heirs under such policy, and under the Texas Law, and began the payment of compensation at the rate of $20 per week from the date of Perkins' death, and continued to make payments to the heirs until they filed said former suit against the Electric Company, whereupon the insurer discontinued payments after paying $720; that by reason of facts pleaded in a former suit insurer pleaded that the matters pleaded by appellant herein were res adjudicata.

Appellee further answered that as a part of the transaction had in the policy sued on it had issued two other policies known respectively as contingent liability policy and public liability policy, neither of which was sued on herein, each of which limits the insurer's liability to $15,000, and that, considering all three policies, in no event could recovery be had in this suit, since this suit is based on the workmen's compensation policy, and was not intended to and did not cover any other policy, and that policy sued on, with its indorsements and riders, had been submitted to and approved by the insurance department of Texas, with its indorsements and riders.

Appellee, by its trial amendment, pleaded that, if wrong in its contention that Perkins was an employee of Stone & Webster, Inc., in that event the Electric Company was negligent in the former suit in not pleading matters peculiarly within its knowledge and in not pleading the workmen's compensation policy, and that such negligence was the proximate cause of its loss and damage, and that in the former suit no plea in abatement to the nonjoinder of appellee to said suit was made by either party, but that plaintiff in said suit did ask recovery for Perkins' heirs, and for the use and benefit of appellee in this suit, and that the $720 recovery in the former suit was adjudged to be paid, and was paid, to appellee, whereby it ratified said judgment, and is now estopped to question same, and Electric Company is likewise estopped, and that all such by said judgment is res adjudicata.

The trial was by the court without a jury. The court filed findings of fact and conclusions of law, and entered judgment for appellee.

## Opinion.

Appellant, Electric Company, presents but one assignment of error, which is as follows: "The court erred in holding that the policy sued upon in this case imposed liability upon the defendant's part, insofar as this plaintiff was concerned only under the Workmen's Compensation Law and in not rendering judgment for the plaintiff."

To the above appellee presents the following counter-proposition: "The court committed no error in holding that the policy sued on imposed no liability on this defendant in favor of plaintiff by reason of Perkins' death, because said policy related only to and covered only the relation of employer and employee, and it was undisputed that Perkins was an employee of Stone & Webster, Inc., and was not an employee of the Electric Company."

The trial court found:

"Bailey Perkins, an employee of Stone & Webster, Inc., was killed by the negligence of employers of El Paso Electric Company while he was working on a switch tower south of the Electric Company's plant in the City of El Paso, Texas, on the 15th day of March, 1925; Stone & Webster, Inc., as an independent contractor, was engaged at the time in performance of a contract with the El Paso Electric Company in the installation of a certain Electrical equipment on the switch tower within the classification of the operations contained in the policy, such work being performed under what is known as 'cost plus' contract. The facts and circumstances surrounding the death of said Perkins as developed herein are as set forth with substantial correctness in case reported in 292 S. W. 935. The said Perkins was not an employee of the El Paso Electric Company.

"On the first day of February, 1925, previous to the death of Perkins, Stone & Webster, Inc., had taken out the policy sued upon by the plaintiff in this case, same being known as a Standard Workmen's Compensation & Employers Liability Policy. Said policy was in force and effect at all times relevant herein, as were the other policies introduced herein."

Then follows a finding in substance that upon the death of Perkins all notices required by the policy were given the insurer, and that the insurer refused to defend, and that Electric Company did defend the suit brought,

which resulted in the final judgment stated, its payment by appellant, demand on appellee, and payment refused, etc.

The trial court concluded: The policy sued on covers only a statutory liability imposed by the Workmen's Compensation Law (Rev. St. 1925, art. 8306 et seq.). The recovery on the death of Perkins was not predicated on a liability imposed by the Workmen's Compensation Law.

Appellant's contention is that the policy sued on was issued to and covered the Electric Company, and Stone & Webster, Inc., and that the court erred in the construction placed upon the policy, and therefore in the judgment rendered.

Appellant in its brief points out and stresses the following provisions of the policy (we have hereinabove copied the material features of the policy, but think to restate the provision of the policy as respects personal injury sustained by employees, including death resulting therefrom):

"One. (a) To pay promptly to any person entitled thereto under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due, (1) to such person because of the obligation for compensation for any such injury imposed upon or accepted by this employer under such of certain statutes, as may be applicable thereto, cited and described in an endorsement attached to this policy, each of which statutes is herein referred to as the Workmen's Compensation Law."

"One. (b) To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada."

"Three. (To defend any suits, etc.)

"Four. (To pay all costs taxed, etc.)

"Five. (The agreement to apply to such injuries sustained by any person employed by the employer, etc.)

"Six. (The agreement to apply to such injuries sustained by reason of the business operations described in said Declarations, etc.)

"Seven. (The agreement to apply to such injuries sustained by reason of accidents occurring, as limited in 'Item 2 of the Declarations'.)

"G. No action shall lie against the Company to recover upon any claim or for any loss under Paragraph One (b) foregoing unless brought after the amount of such claim or loss shall have been fixed and rendered certain either by final judgment against the em-

ployer after trial of the issue, or by agreement between the parties with the written consent of the Company, nor in any event unless brought within two years thereafter."

Amendments were attached to the policy as set out in the statement of facts and as pleaded, as follows:

"Named additional interests endorsements. Texas Operations. Stone & Webster, Inc."

Then follow: "It is understood and agreed that the following Company is hereby named as an additional Assured under the policy to which this endorsement is attached: 'El Paso Electric Company,' but only with respect to work undertaken by Stone & Webster, Inc., for said additional assured upon the so-called 'cost plus' basis or plan."

We have not copied here the other two policies, the contingent liability policy and the public liability policy, but, construing them together with the policy sued on, we have concluded that the workmen's compensation policy, the policy sued on, relates to workmen's compensation and nothing else, and that the issuance of the other policies, not having relation to workmen's compensation, shows the intention of the parties that the policy sued on was not intended to cover the liability sued on. It is true that in the declaration or indorsement Electric Company is named as an additional assured in the limited sense stated, and for that reason the question presented is confused. It does seem, however, that the same parties would not at the same time have more than one policy covering the same liability. We concur in the insistence of appellee that the purpose of naming additional assured for whom Stone & Webster, Inc., might do work, including the Electric Company, was to provide protection to the Electric Company in the event of its being adjudged that the Electric Company, and not Stone & Webster, Inc., was the employer of the injured employee. Stone & Webster, Inc., was the employer of the injured employee. Stone & Webster, Inc., being an independent contractor, doing work for the Electric Company, it seems reasonable, and we think the proper interpretation of the matter is, that it was contemplated that the question might arise as to whether Stone & Webster, Inc., or the Electric Company was the employer of an injured employee. The policy here is limited to the coverage specified; that is, to pay compensation to an injured employee.

Appellant invokes the provision of subclause of declaration known as amended indorsement No. 2, providing, in substance, that "employees of any of the firms or corporations for whom Stone & Webster, Inc. have work to perform shall be considered employees of Stone & Webster, Inc., within the coverage provided by the undermentioned policy during the period that said employees

are within the supervision or control of said Stone & Webster, Inc."

We do not understand appellant's contention to be that Perkins was its employee and at the time of the accident loaned to Stone & Webster; its allegation is "that Perkins had been employed by Stone & Webster, several years before his death," and other similar allegations.

We think it unnecessary to separately review each of the several phrases and clauses, parts of the policy, to determine appellee's liability within the coverage of the policy as an entirety. As we view it, such phrases and clauses, stressed by appellant as showing liability of appellee, merely specify what employees, under the several kinds of work that may be done, shall be covered for compensation purposes under the compensation policy.

We have not discussed, and think it unnecessary to discuss, whether appellant, by reason of the former suit, is now precluded from recovery herein by res adjudicata, or estoppel by judgment. We simply hold that, the policy sued on being a compensation policy, appellee is not liable in this suit under the policy found in the record.

The judgment is affirmed.